# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Darin Brown,<br><br>                                          Plaintiff,<br><br>v.<br><br>Soo Line Railroad Co. d/b/a Canadian Pacific,<br><br>                                        Defendant. | Case No. _____<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

## INTRODUCTION

1. In the summer of 2016, Defendant Soo Line Railroad Co. d/b/a Canadian Pacific's negligence caused its employee—Plaintiff Darin Brown—to suffer a work-related injury, which has left him with chronic pain and limited his major life activities. Some ten months later, while working for Canadian Pacific, Brown aggravated his back, which resulted in him seeking medical treatment from a physician, who ordered him to take time off from work so that he could attend physical therapy and heal. When Brown reported the aggravation of his injury and his physician's treatment plan for it to Canadian Pacific, Canadian Pacific responded by terminating him.

2. Pursuant to the Federal Employers' Liability Act, 45 U.S.C. §§ 51, *et. seq.* ("FELA"), Canadian Pacific is liable to Brown for his personal injury. Pursuant to the Federal Railroad Safety Act, 49 U.S.C. § 20109 ("FRSA"), Canadian Pacific is also liable to Brown for retaliating against him for reporting his injury. Finally, pursuant to the Family and Medical Leave Act, § 29 U.S.C. 2601, *et seq.* ("FMLA"), the FRSA, , and the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.*, as amended ("ADA"), Canadian Pacific is liable to Brown for refusing to allow him to return to work after his doctor prescribed time off.

## PARTIES

3. Brown resides in Eyota, Minnesota and worked for Canadian Pacific from May of

1

2007 to the date of the incidents at issue in this case.

4. Canadian Pacific is a railroad carrier engaged in interstate and foreign commerce. It is headquartered in Minneapolis, Minnesota.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over Brown's ADA, FELA, FMLA and FRSA claims under 28 U.S.C. § 1331.

6. Venue is proper under 28 U.S.C. § 1391 because Brown resided in the District of Minnesota when he was injured, Canadian Pacific operates in the District of Minnesota, and the illegal conduct occurred in the District of Minnesota.

## FACTUAL ALLEGATIONS

7. In May of 2007, Canadian Pacific hired Brown.

8. In the summer of 2016, Canadian Pacific ordered Brown to replace a frog, which is a piece of equipment that is attached to the rail at switch points so as to allow trains to cross from one track to another.

9. Canadian Pacific ordered Brown to attach the new frog to the rail with hook plates.

10. Hook plates are antiquated because, *inter alia*, employees need to use an inordinate amount of force to drive them into place using sledge hammers.

11. Canadian Pacific should have used more modern securing equipment, which does not need to be driven in place with sledge hammers.

12. Canadian Pacific should have used more people, which would have allowed Brown to take a break between sledge hammer swings.

13. Brown injured his back while driving the hook plate into place.

14. Brown immediately reported the injury to Canadian Pacific and sought medical treatment for it.

15. Brown's injury forced him to be unable to work for approximately a month.

16. Brown has suffered from chronic pain since he injured his back.

17. On February 14, 2017, while working for Canadian Pacific, Brown aggravated his back injury.

18. Brown immediately reported the aggravation to his supervisor and then sought medical treatment.

19. Brown's primary care physician was unable to see him, so Brown was seen by another doctor at the same clinic.

20. The doctor who saw Brown ordered Brown to take time off of work so that he could attend physical therapy and heal.

21. Brown reported the doctor's diagnosis and order to Canadian Pacific, which requested that Brown have the doctor fill out certain paperwork.

22. When Brown asked the doctor who saw him to fill out the paperwork, Brown was told that his primary-care physician need to fill out the paperwork; however, Brown's primary care-physician would not fill out the paperwork without examining Brown, and Brown's primary-care physician did not have any immediate openings.

23. Brown called Canadian Pacific and was told to stay in communication with it about his efforts to be examined by his primary-care physician and have the paperwork submitted to it.

24. Though Brown stayed in contact with Canadian Pacific, he was terminated for failing to submit the paperwork.

25. Canadian Pacific refused to reinstate Brown even after his doctors notified it that Brown had, in fact, been making efforts to have the paperwork filled out and submitted, and that his failure to have the paperwork returned was their fault.

## CANADIAN PACIFIC'S RETALIATORY MOTIVE

26. Congress has explicitly said that "[t]he underreporting of railroad employee injuries has long been a particular problem, and railroad labor organizations have frequently complained that harassment of employees who reported injuries is a common railroad management practice." *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 159 (3d Cir. 2013) (citing Hearings).

27. Railroads' motive to discourage workers from reporting injuries includes that it is exempt from workers' compensation laws, which means it is liable to employees whose injuries are caused by its negligence, and the agency responsible for enforcing railroad safety laws—the Federal Railroad Administration ("FRA")—uses the number of reported injuries to determine where it should send its inspectors. *See*, *e.g.*, *Barati v. Metro-N. R.R. Commuter R.R. Co.*, 939 F. Supp. 2d 143, 148 (D. Conn. 2013) (quoting the testimony of the former head of the FRA's Office of Safety).

28. Canadian Pacific also ensures that supervisors have a personal motive to discourage their subordinates from reporting workplace injuries by maintaining an incentive compensation plan whereby it pays its managers a yearly bonus based, in part, on the number of FRA-reportable injuries employees report (with less injury reports translating to higher bonuses).

29. Canadian Pacific maintains such compensation plan despite Congress having expressed concern as early as 2008 "that some railroad supervisors [have] intimidated employees from reporting injuries to the FRA, in part, because their compensation depended on low numbers of FRA reportable injuries within their supervisory area." *Araujo*, 708 F.3d 152, 161 n. 7 (citing Hearings).

## CANADIAN PACIFIC'S RETALIATION WAS PURSUANT TO ITS COMPANYWIDE PRACTICES AND POLICIES

30. The rule Canadian Pacific alleges Brown violated applies companywide.

4

31. It is a particularly common and companywide practice at Canadian Pacific to use these and its other rules, which are vague and could apply to most any situation, to justify retaliation against employees who report injuries. *See*, *e.g.*, Amended Complaint, *Badger v. Soo Line Railroad Co. d/b/a Canadian Pacific*, No. 5-4760-15-031 (ALJ April 29, 2016); *Peterkin v. Soo Line Railroad Co. d/b/a Canadian Pacific*, No. 5-4760-17-008 (OSHA).

32. Despite these and other numerous FRSA violations, Canadian Pacific has not disciplined a single supervisor for retaliating against employees for engaging in FRSA-protected activity.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE ADA

33. Brown is disabled within the meaning of the ADA.

34. Brown is a qualified individual within the meaning of the ADA.

35. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

36. Section 12112(b)(5)(A) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ."

37. Canadian Pacific discriminated against Brown on the basis of disability when it terminated him.

38. Because Canadian Pacific violated 42 U.S.C. § 12112, Brown has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of

$75,000. Brown is also entitled to attorneys' fees and costs incurred in connection with these claims.

39. Canadian Pacific committed the above-alleged facts with reckless disregard or deliberate disregard for Brown's rights and safety. As a result, Brown is entitled to punitive damages.

## COUNT II
## VIOLATIONS OF THE FELA

40. The FELA provides that Canadian Pacific is "liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51.

41. In the summer of 2016, Canadian Pacific negligently failed to furnish and provide Brown a reasonably safe place to work, reasonably safe conditions for work, reasonably safe appliances for work, reasonably safe equipment for work, and reasonably safe methods of work.

42. Canadian Pacific's Summer of 2016 negligence injured Brown's back.

43. The injuries and damages sustained by Brown were caused, in whole or in part, by Canadian Pacific's negligence, in violation of the FELA, when Canadian Pacific failed to provide Brown with a reasonably safe place to work, which caused Brown to suffer severe, permanent, and painful injuries to his back and his body as a whole.

44. The above-described acts and omissions of Canadian Pacific include Canadian Pacific's violation of one or more safety rules, regulations and statutes, including Canadian Pacific's own rules, which constitute strict liability against Canadian Pacific.

45. On account of said injuries, Brown has undergone extensive medical care and treatment and will be required to seek medical treatment in the future. Even with such treatment,

the strength, use, and function of Brown's back, related body as a whole, and general health and strength have been permanently weakened, diminished, and impaired. As a result, in addition to the physical pain, mental anguish, and lost capacity for the enjoyment of life he has and will continue to suffer, Brown has lost and will continue to lose earnings, and has incurred and will continue to incur expenses for medical treatment.

## COUNT III
## VIOLATIONS OF THE FMLA—INTERFERENCE

46. The FMLA entitles employees to up to twelve weeks of leave during any twelve-month period for certain reasons, including the employee's serious health condition. *See* 29 U.S.C. § 2612(a)(1).

47. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." *See* 29 U.S.C. § 2615(a)(1).

48. Canadian Pacific interfered with, restrained, and denied the exercise of the protected rights of Brown when it, among other things, denied him FMLA leave and terminated him.

49. Because Canadian Pacific violated the FMLA, Brown is entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. Brown is also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

50. Brown committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of Brown. As a result, Brown is entitled to punitive damages.

## COUNT VI
## VIOLATIONS OF THE FMLA—DISCRIMINATION

51. The FMLA makes it is unlawful for "any employer to discharge or in any other

7

manner discriminate against any individual for opposing any practice made unlawful by [the Act]." *See* 29 U.S.C. § 2615(a)(2).

52. Canadian Pacific discriminated against Brown's rights under the FMLA when, among other things, it terminated him for taking FMLA leave.

53. Because Canadian Pacific violated the FMLA, Brown is entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. Brown is also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

54. Canadian Pacific committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of Brown. As a result, he is entitled to punitive damages.

## COUNT V
## VIOLATIONS OF THE FRSA—RETALIATION FOR REPORTING AN INJURY

55. The FRSA prohibits railroad carriers from demoting, suspending, reprimanding, or in any other way discriminating against an employee for engaging in protected activity. Protected activity includes "notify[ing], or attempt[ing] to notify, the railroad carrier . . . of a work-related personal injury . . . ." 49 U.S.C. § 20109(a)(4).

56. Brown engaged in protected activity by reporting the aggravation of his injury to Canadian Pacific.

57. Canadian Pacific knew Brown had engaged in protected activity when it terminated him.

58. Canadian Pacific took adverse actions against Brown when it terminated him.

59. Brown's protected activity was a contributing factor in Canadian Pacific's decision to terminate him. In fact, Brown's termination resulted directly from his protected activity.

## COUNT IV
## VIOLATIONS OF THE FRSA—INTERFERENCE WITH A DOCTOR'S TREATMENT PLAN

60. The FRSA prohibits railroad carriers from "threaten[ing] discipline to[ ] an employee for . . . following orders or a treatment plan of a treating physician . . . ." 49 U.S.C. § 20109(c)(2).

61. Brown engaged in protected activity by communicating the treatment plan of his physician to Canadian Pacific, which included taking time off of work so that he could attend physical therapy and heal.

62. Canadian Pacific took an adverse action against Brown when it terminated him

63. Brown's protected activity was a contributing factor in Canadian Pacific's decision to terminate him. In fact, Brown's termination resulted directly from his protected activity.

## REQUEST FOR RELIEF

64. Brown requests that the Court find Canadian Pacific acted in direct violation of the ADA, FELA, FMLA, and FRSA.

65. Brown further requests that the Court order Canadian Pacific to:

- reinstate him;

- clear and/or expunge any record of misconduct by him regarding the incidents described herein;

- pay to him an award for compensatory damages arising from loss of income and benefits in an amount to be determined by the trier of fact;

- pay to him an award for garden-variety emotional distress in an amount in excess of $75,000.00;

- pay to him an award for pain and suffering in an amount in excess of $75,000.00;

- pay to him an award for past and future medical expenses in an amount in excess of $75,000.00;

- pay to him an award for costs (including litigation and expert costs), disbursements, and attorneys' fees;

- pay to him an award for $300,000 for punitive damages for each violation of the ADA and $250,000 for punitive damages for each violation of the FRSA; and

- pay to him an award for liquidated damages in an amount equal to his wage and benefit loss.

66. Brown further requests that the Court order judgment against Canadian Pacific for all other relief available under the ADA, FELA, FMLA, and/or FRSA and such other relief as the Court deems just and equitable.

Dated: August 3, 2018

**THE MOODY LAW FIRM**

s/ *Nicholas D. Thompson*
Nicholas D. Thompson (MN # 0389609)
nthompson@moodyrrlaw.com
500 Crawford Street, Suite 200
Portsmouth, VA 23704
Telephone: (757) 477-0991
Fax: (757) 397-7257

**ATTORNEYS FOR PLAINTIFF**